IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

RONALD WINTON COPPAGE,

   Plaintiff,

     v.

JAMES E. BRADSHAW, JR.,

   Defendant.

CIVIL ACTION FILE
NO. 1:08-CV-811-TWT

ORDER

This is a Fair Labor Standards Act case. It is before the Court on the Plaintiff's Motion for Summary Judgment [Doc. 34] and the Defendant's Motion for Summary Judgment [Doc. 35]. For the reasons stated below, the Plaintiff's Motion for Summary Judgment [Doc. 34] is DENIED. The Defendant's Motion for Summary Judgment [Doc. 35] is GRANTED.

I. Background

CLA USA, Inc. ("CLA") is an insurance agency that provides financial services such as life insurance, fixed annuities, and long term care insurance. Defendant James Bradshaw was president of CLA at all relevant times. (Compl. ¶ 5.) Plaintiff Ronald Coppage was employed by CLA as a State Managing Director from December 1, 2003, to March 2, 2006. His duties included training and motivating state

representatives, obtaining signatures from clients on trust agreements, assigning weekly leads to his representatives, scheduling quarterly training meetings, maintaining paperwork relating to the sales of trusts to clients, reporting weekly productivity levels to management, handling minor disputes between representatives and clients, recruiting agents with the assistance of an in-house recruiting representative, and communicating with the Upper Management Team on a regular basis. (Pl.'s Mot. for Summ. J., Ex. 7, Attach. B.) After Coppage resigned, CLA sued him in state court for breach of fiduciary duty and misappropriation of trade secrets. Coppage counterclaimed that he was denied overtime compensation in violation of the Fair Labor Standards Act ("FLSA"). He also filed this suit against Bradshaw alleging identical FLSA violations. Both parties now move for summary judgment.

## II. Motion for Summary Judgment Standard

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The court should view the evidence and any inferences that may be drawn in the light most favorable to the nonmovant. Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970). The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S.

317, 323-24 (1986). The burden then shifts to the nonmovant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).

III. Discussion

The FLSA requires employers to pay employees time-and-a-half for any hours worked in excess of forty hours per week. 29 U.S.C. § 207(a)(1). Coppage asserts that he regularly worked over forty hours per week and is entitled to summary judgment because there is no genuine issue of fact as to his status as a non-exempt employee. Bradshaw asserts he is entitled to summary judgment because (1) he was not Coppage's employer as defined in the FLSA, (2) the applicable statute of limitations bars Coppage's claim, and (3) Coppage was exempt from the FLSA's overtime requirement under Section 203 of the FLSA.

A. Bradshaw's Status as an Employer

Bradshaw asserts that he is not liable as an "employer" under the Act. The Eleventh Circuit applies a disjunctive test to determine the FLSA liability of corporate officers. See Patel v. Wargo, 803 F.2d 632, 638 (11th Cir. 1986). "To be personally liable, an officer must either be involved in the day-to-day operation [of the company] or have some direct responsibility for the supervision of the employee." Id.

Here, Bradshaw was president of CLA and a member of its Upper Management Team. (Pl.'s Mot. for Summ. J., Ex. 3 at 15, 135.) As president, he "r[an] all aspects of sales and marketing" and reviewed the cash flow statements of the company. (Pl.'s Mot. for Summ. J., Ex. 3 at 15, 21.) He also participated in the interviewing, hiring, and training of new employees. (Pl.'s Mot. for Summ. J., Ex. 3 at 52, 59, 69.) He monitored the productivity of State Managing Directors and was responsible for communicating their job requirements and any changes thereto. (Pl.'s Mot. for Summ. J., Ex. 3 at 40, 110-11, Ex. 4 at 26-27.) He also participated in determining their pay rates and structuring their commission compensation scheme. (Pl.'s Mot. for Summ. J., Ex. 3 at 69-70.) Moreover, he communicated directly with Coppage regarding Coppage's concerns about contract provisions and compensation. (Pl.'s Mot. for Summ. J., Ex. 3 at 125-130, Ex. 24.) Collectively, these facts indicate that Coppage was involved in the day-to-day operations of CLA and directly supervised Coppage and other State Managing Directors. Because Bradshaw does not dispute these facts, Coppage is entitled to treat Bradshaw as his employer for purposes of FLSA liability.

B. Statute of Limitations

The statute of limitations for an ordinary violation of the FLSA is two years, and the statute of limitations for a willful violation is three years. 29 U.S.C. § 255(a).

Bradshaw argues that the two-year statute of limitations bars Coppage's FLSA claim in its entirety. Coppage asserts that the two-year statute of limitations does not apply because Bradshaw willfully violated the FLSA. A willful violation occurs when "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133 (1988). Whether a violation is willful is a jury question. See Morgan v. Family Dollar Stores, Inc., 551 F.3d 1233, 1282-83 (11th Cir. 2008). Here, both parties offer deposition testimony and other evidence supporting their position. Coppage points to an ADP payroll form describing him as a non-exempt employee, (Pl.'s Mot. for Summ. J., Ex. 5 at 45-46, Ex. 1), and Bradshaw cites deposition testimony from Olaf Turek, CLA's attorney, stating that he acted reasonably and had never before been accused of a FLSA violation. (Def.'s Mot. for Summ. J., Ex. F ¶ 46.) This evidence creates a genuine issue of fact as to whether Bradshaw willfully violated the FLSA and precludes summary judgment for Bradshaw on statute of limitations grounds.

    C.    Exemptions

The FLSA overtime requirement does not apply to employees who are "employed in a bona fide executive, administrative or professional capacity . . . or in the capacity of outside sales." 29 U.S.C. § 213(a)(1). The regulations establish five

relevant exemptions under this provision: (i) the outside salesman exemption, (ii) the administrative employee exemption, (iii) the executive employee exemption, (iv) the combination exemption, and (v) the highly compensated employee exemption. 29 C.F.R. §§ 541.100, 541.200, 541.500, 541.601, 541.708. Bradshaw asserts that Coppage is exempt under each.

1.  <u>Outside Salesman Exemption</u>

The outside salesman exemption exempts "any employee (1) whose primary duty is (i) making sales, or (ii) obtaining orders or contracts for services or for the use of facilities for which a consideration will be paid by the client or customer; and (2) who is customarily and regularly engaged away from the employer's place or places of business in performing such duty." 29 C.F.R. § 541.500(a). The Code of Federal Regulations defines "primary duty" as "the principal, main, major or most important duty that the employee performs" and emphasizes that the "determination of an employee's primary duty must be based on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole." 29 C.F.R. § 541.700(a). Bradshaw asserts that Coppage's primary duty was outside sales because he sold 130 products to 88 clients during his employment and made 209 visits to deliver trusts or conduct periodic reviews for 142 clients. (Def.'s Mot. for Summ. J., Ex. F ¶ 16, Ex. F3.) Coppage admits that he "engage[d] in occasional sales" but

denies that it was his primary duty. (Pl.'s Response to Def.'s Mot. for Summ. J., at 12.) As support, he points to Attachment B of the employment agreement, which does not list sales among his duties. (See Pl.'s Mot. for Summ. J., Ex. 7, Attach. B.) This evidence shows that there is a factual dispute as to Coppage's primary duty that precludes summary judgment for either party on the outside salesman exemption.

### 2. Administrative Employee Exemption

The administrative employee exemption exempts "any employee (1) compensated on a salary or fee basis at a rate of not less than $455 per week . . . ; (2) whose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and (3) whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance." 29 C.F.R. § 541.200.

#### a. Salary Requirement

An employee is considered to be compensated on a salary basis if he regularly receives a predetermined amount of compensation that is not subject to reduction because of variations in the quality or quantity of the work performed. 29 C.F.R. § 541.602. An employer may provide an exempt employee additional performance-based compensation without destroying the exemption as long as the employee receives the minimum guaranteed amount. 29 C.F.R. § 541.604. Coppage asserts that

he was not compensated on a salary basis because (1) his compensation was subject to reduction based on his sales performance and (2) his compensation was subject to deductions for business cards, shipping costs, signature guarantees, and other expenses.

Coppage's employment agreement provided for a base compensation of $1,153.85 per biweekly pay period. (Pl.'s Mot. for Summ. J., Ex. 7, Attach. A.) In exchange, he was expected to earn at least $2,307.70 per pay period in commissions. (Id.) This was called the "expected performance level." If Coppage earned more than $2,307.70 in a pay period, he received the difference as additional compensation. If he earned less than $2,307.70, the difference was carried forward to the following pay period as a negative commission balance. Any additional compensation earned by Coppage in the following pay period was offset by this negative commission balance.

Importantly, Coppage received $1,153.85 in base compensation each pay period regardless of his performance. (See Def.'s Mot. for Summ. J., Exs. A4-A7.) He does not dispute this fact. Instead, he argues that the performance-based deductions from his commission balance were impermissible under the salary basis requirement. However, where an exempt employee receives additional compensation above his guaranteed minimum salary, an employer may make deductions without destroying the salary basis. See WH Opinion Letter, FLSA 2006-43 (Nov. 27, 2006) (stating that

complicated compensation systems involving salaries or draws against commission and fees satisfy the salary basis test even when the commissions were subject to adjustment for cancelled trades, trade errors, expenses, and other trade-related losses); WH Opinion Letter, FLSA 2006-24NA (Nov. 3, 2006) (stating that deductions from bonus payments are permissible and do not affect the employee's exempt status where they do not reduce the guaranteed minimum salary); WH Opinion Letter FLSA 2006-24 (July 6, 2006) (stating that cash shortage deductions from additional compensation are permissible and do not affect an employee's exempt status); see also Havey v. Homebound Mortgage, Inc., 547 F.3d 158, 165 (2d Cir. 2008) ("A two-part salary scheme in which employees receive a predetermined amount, plus, on a quarterly prospective basis, an additional portion subject to deductions for quality errors does not violate the salary basis test."). Accordingly, CLA's commission compensation structure does not violate the salary basis test.

Coppage next argues that he was not compensated on a salary basis because CLA made improper deductions for the costs of business cards, shipping expenses, and signature guarantees and reserved the right to make deductions for "charge backs for employee errors or omissions, . . . advancements or other draws, outstanding loans, and other such deductions as may be deemed necessary or proper in the sole discretion of the employer." (Pl.'s Mot. for Summ. J., at 3; Ex. 7, Attach. A.) This argument

fails for two reasons. First, the applicable regulation does not prohibit deductions from an employee's salary for business expenses such as shipping and business cards. Instead, it prohibits reductions based on "variations in the quality or quantity of the work performed." 29 C.F.R. § 541.602(a); see also Hogan v. Allstate Ins. Co., 361 F.3d 621, 626 (11th Cir. 2004) (distinguishing in dicta between deductions for office expenses and improper deductions based on the quality or quantity of work performed). Second, Coppage admits that no improper deductions were taken from his base compensation. (Def.'s Mot. for Summ. J., Ex. A, 126-27.) As discussed above, deductions from an employee's additional compensation do not violate the salary basis requirement. Therefore, Bradshaw is entitled to judgment as a matter of law that Coppage was compensated on a salary basis at a rate of $1,153.85 per biweekly pay period, or $576.92 per week.

    b. <u>Primary Duty</u>

The second prong of the administrative employee exemption provides that the employee's "primary duty" must be "work directly related to the management or general business operations of the employer or the employer's customers ." 29 C.F.R. § 541.200. Employees in the financial services industry generally meet the duties requirement if their primary duty involves "work such as collecting and analyzing information regarding the customer's income, assets, investment or debts; determining

which financial products best meet the customer's needs and financial circumstances; advising the customer regarding the advantages and disadvantages of different financial products; and marketing, serving or promoting the employer's financial products." 29 C.F.R. § 541.203(b). Bradshaw asserts that Coppage performed each of these functions for CLA and cites deposition testimony from Coppage, Turek, and himself as evidentiary support. (Def.'s Mot. for Summ. J., at 11; Ex. A, 23-25, 45-48; Ex. E ¶¶ 8-11, 13, 15; Ex. E3; Ex. F ¶¶ 8-10, 12, 17; Ex. F2.) Coppage argues that his primary duty was "generally clerical in nature." (Pl.'s Reply at 8.) This is not enough to create a genuine issue of fact given the undisputed testimony that Coppage was primarily engaged in the management of his employer's financial services business.

c. <u>Discretion and Independent Judgment</u>

The third prong of the administrative employee exemption provides that an employee's primary duty must "involve the exercise of discretion or independent judgment with respect to matters of significance" to qualify as an exempt administrative employee. 29 C.F.R. § 541.200. An employee exercises discretion when he compares and evaluates possible courses of conduct and acts after considering the various possibilities. 29 C.F.R. § 541.202. The fact that his decision or action is subject to review by management is not dispositive. Instead, whether an

employee exercises discretion with respect to significant matters is a fact intensive inquiry that involves the following considerations:

> [W]hether the employee has authority to formulate, affect, interpret, or implement management policies or operating practices; whether the employee carries out major assignments in conducting the operations of the business; whether the employee performs work that affects business operations to a substantial degree, even if the employee's assignments are related to operation of a particular segment of the business; whether the employee has authority to commit the employer in matters that have significant financial impact; whether the employee has authority to waive or deviate from established policies and procedures without prior approval; whether the employee has authority to negotiate and bind the company on significant matters; whether the employee provides consultation or expert advice to management; whether the employee is involved in planning long- or short-term business objectives; whether the employee investigates and resolves matters of significance on behalf of management; and whether the employee represents the company in handling complaints, arbitrating disputes or resolving grievances.

29 C.F.R. § 541.202(b). Bradshaw asserts that Coppage exercised the requisite discretion to qualify as an exempt administrative employee. In support, he cites the employment agreement, which states that Coppage had the independent authority to certify agents, handle minor disputes, and place agents on probation for failing to meet production goals. (Pl.'s Mot. for Summ. J., Ex. 7, Attach. B.) He also points to deposition testimony from Coppage, Bradshaw, and Turek stating that Coppage regularly met with clients and offered individualized recommendations regarding the purchase of life insurance and other financial products. (Def.'s Mot. for Summ. J., at 14.) Coppage argues that he did not exercise discretion with respect to any significant

matters. Like Bradshaw, he cites the employment agreement as support. (Pl.'s Mot. for Summ. J., Ex. 7, Attach. B.) The agreement provides that Coppage may not represent CLA in major disputes, that agents recruited by Coppage must be screened by his superiors, and that Coppage must regularly meet with members of the Upper Management Team to review production goals. (Id.) He also points to deposition testimony from Loper and Bradshaw that states that Coppage did not have the authority to enter into a contract on behalf of the company or make hiring and firing decisions. (Pl.'s Reply at 10.) These limitations upon his authority are not enough to create a genuine factual dispute as to whether Coppage's discretion as a State Managing Director extended to matters of significance.

It is not necessary to discuss the other possible FLSA exemptions. However, it is worthy of note that the Plaintiff qualified as a "highly compensated employee" for at least the calendar years 2004 and 2005. This exemption exempts employees who earn a total annual compensation of at least $100,000 and customarily and regularly perform any one or more of the exempt duties or responsibilities of an executive, administrative, or professional employee. 29 C.F.R. § 541.601.

To qualify for the highly compensated employee exemption, an employee must earn at least $100,000 of total annual compensation, including at least $455 per week paid on a salary or fee basis. Total annual compensation may also include

commission payments, nondiscretionary bonuses, and other nondiscretionary compensation. 29 C.F.R. § 541.601(b)(1). The employer may use any 52-week period as the year, including a calendar year, a fiscal year, or an anniversary-of-hire year. 29 C.F.R. § 541.601(b)(4). However, if the employer does not define the applicable year in advance, the calendar year applies. Id. If an employee does not work a full year, he may still qualify for the exemption if he receives a pro rata portion of $100,000 based on the number of weeks that he was employed during the year. 29 C.F.R. § 541.601(b)(3).

Here, CLA did not define the applicable year in advance. Accordingly, the Court looks to the calendar year to determine if Coppage met the compensation requirement. Both parties agree that Coppage received over $100,000 in compensation during 2004 and 2005. (Pl.'s Resp. to Def.'s SUMF ¶¶ 31, 32.) Coppage asserts that this amount did not include a minimum guaranteed salary of at least $455 per week. For the reasons stated in Section III(C)(2)(a), the Court disagrees and finds that Coppage met the salary requirement in 2004 and 2005.

The second prong of the highly compensated employee exemption provides that the employee must "customarily and regularly perform[] any one or more of the exempt duties or responsibilities of an executive, administrative or professional employee . . . ." 29 C.F.R. § 541.601(a). The duties requirement is relaxed in the case

of highly compensated employees because a "high level of compensation is a strong indicator of an employee's exempt status, thus eliminating the need for a detailed analysis of the employee's job duties." 29 C.F.R. § 541.601(c). Here, there is no genuine issue of material fact as to whether Coppage customarily and regularly performed at least one administrative or executive duty. For example, the employment agreement, which both parties agree accurately represents Coppage's duties, requires Coppage to recruit, train, motivate, discipline, certify, and manage a team of field representatives. (Pl.'s Mot. for Summ. J., Ex. 7, Attach. B.) These duties fall squarely within the requirement that an executive employee direct the work of two or more other employees.

Coppage does not appear to dispute this assessment. Instead, he argues that the highly compensated employee exemption, like the administrative employee exemption, requires that the employee exercise discretion or independent judgment. (Pl.'s Response at 10.) However, the applicable regulation does not require a highly compensated employee to exercise discretion. To the contrary, 29 C.F.R. § 541.601(c) makes clear that a highly compensated employee need not satisfy each requirement stated in the administrative and executive employee exemptions:

> An employee may qualify as a highly compensated executive employee, for example, if the employee customarily and regularly directs the work of two or more other employees, even though the employee does not

meet all of the other requirements for the executive exemption under Section 541.100.

29 C.F.R. § 541.601(c); see also Amendola v. Bristol-Myers Squibb Co., 558 F. Supp. 2d 459, 478 (S.D.N.Y. 2008) ("Among other things, this exemption removes any requirement that an employer prove that an administrative employee exercised discretion in the performance of her duties."). Accordingly, Coppage satisfied both prongs of the highly compensated employee exemption in 2004 and 2005. Therefore, Bradshaw would be entitled to summary judgment with respect to Coppage's FLSA claims for overtime worked in those years.

## IV. Conclusion

For the reasons stated above, the Plaintiff's Motion for Summary Judgment [Doc. 34] is DENIED. The Defendant's Motion for Summary Judgment [Doc. 35] is GRANTED.

SO ORDERED, this 15 day of October, 2009.

/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge